## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| HENRY ED BILLINGS, Individually | ) | |
| And As Special Administrator Of The | ) | |
| Estate Of Judy Billings, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | |
| MANORCARE OF WICHITA, KS LLC, | ) | No. 21-2295-KHV |
| HCR MANORCARE, INC., a Delaware company, | ) | |
| HCR MANORCARE, INC., an Ohio company, | ) | |
| PROMEDICA HEALTH SYSTEM, INC., | ) | |
| HCR MANORCARE SERVICES, LLC, | ) | |
| WICHITA OPERATIONS ASSOCIATIONS, LLC, | ) | |
| CENTERS FOR CARE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Henry Ed Billings, the surviving spouse of Judy Billings and the administrator of her estate, filed suit against Manorcare of Wichita KS, LLC, HCR Manorcare, Inc., a Delaware corporation ("HCR Delaware"), HCR Manorcare Inc., an Ohio corporation ("HCR Ohio"), ProMedica Health System, Inc., HCR Manorcare Services, LLC ("HCR Services"), Wichita Operations Associates, LLC and Centers for Care, LLC.  Plaintiff asserts claims for wrongful death and negligence against entities that owned or operated a skilled nursing facility where Ms. Billings resided.  This matter is before the Court on Defendant Centers For Care, LLC's Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6) And For More Definite And Certain Statement Pursuant To Fed. R. Civ. P. 12(c) (Doc. #27) filed August 23, 2021, Defendant HCR Manorcare, Inc. (DE)'s Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6), Or In The Alternative, Motion For  A More Definite And Certain Statement Pursuant To Fed. R. Civ. P. 12(e) (Doc. #35) filed August 25, 2021,

Defendant ProMedica Health System, Inc.'s Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(2), Or In The Alternative, Motion For A More Definite And Certain Statement Pursuant To Fed. R. Civ. P. 12(e) (Doc. #37) filed August 25, 2021 and Defendant HCR Manorcare, Inc. (OH)'s Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6), Or In The Alternative, Motion For A More Definite And Certain Statement Pursuant To Fed. R. Civ. P. 12(e) (Doc. #39) filed August 26, 2021. For reasons stated below, the Court sustains the motions to dismiss of HCR Delaware and ProMedica Health System but overrules the remaining motions.

## Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id. at 678. Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Id. However, plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the

Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiff's complaint alleges as follows:

Beginning in November of 2018, Judy Billings resided at Manorcare of Wichita, a skilled nursing facility in Wichita, Kansas. On December 1, 2018, ownership changed and the facility became Wichita Operations.

Ms. Billings developed an avoidable pressure ulcer either (1) on November 11, 2018, while she was under the care of Select Specialty Hospital - Wichita, Inc. or (2) between November 21 and November 27, 2018, while she was a resident of Manorcare of Wichita. Because of the negligence of facility staff at Manorcare of Wichita and Wichita Operations, her pressure ulcer deteriorated. Medical personnel eventually diagnosed her with osteomyelitis and on April 13, 2019, she died.

I.      **Facility Ownership And Operation Through November 30, 2018**

Before July of 2018, HCR Delaware had an ownership interest in several skilled nursing facilities including Manorcare of Wichita. For each nursing facility, HCR Delaware was responsible for staffing and patient care.

From the time of Ms. Billings's admission through November 30, 2018, Manorcare of Wichita KS, LLC owned, operated and did business as Manorcare of Wichita. During this period, HCR Ohio, ProMedica Health System, Inc. and HCR Services owned, operated, managed,

maintained and/or controlled—in whole or in part—Manorcare of Wichita KS, LLC. HCR Ohio, ProMedica and HCR Services exercised substantial control and final authority over (1) staffing budgets at Manorcare of Wichita; (2) development and implementation of facility nursing policies and procedures; (3) hiring and firing of the facility administrator; and (4) appointing the governing body that was legally responsible for establishing and implementing management and operation policies for the facility. Plaintiff's Complaint (Doc. #1), ¶¶ 40, 50, 60, 96.

HCR Delaware, HCR Ohio, ProMedica and HCR Services (collectively the Manorcare Corporate Defendants) were engaged in a joint venture and enterprise to operate Manorcare of Wichita. In doing so, they had a community of pecuniary interest in the operation of the facility and equal rights to control facility operations. Id., ¶ 83. The Manorcare Corporate Defendants did not adequately staff or fund the facility to provide necessary care and services to its residents. The Manorcare Corporate Defendants also retained patients whose needs exceeded the qualifications and care capability of facility staff. Id., ¶ 147.

## II.     Facility Ownership And Operation Beginning December 1, 2018

From December 1, 2018 until Ms. Billings left the facility, Centers for Care, LLC controlled Wichita Operations and exercised final authority over (1) staffing budgets; (2) development and implementation of nursing policies and procedures; (3) hiring and firing of the administrator; and (4) appointing the governing body that was legally responsible for establishing and implementing management and operation policies for the facility. Id., ¶ 76.

## III.    Lawsuit

On July 1, 2021, plaintiff filed suit. He asserts claims for wrongful death and negligence against all defendants. Plaintiff alleges that each defendant and its "agents, servants and/or employees breached their duty and were guilty of the following acts of negligence and carelessness

by failing to measure up to the requisite standard of due care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances," including (1) failing to adequately assess, monitor, document, treat and respond to the needs of Ms. Billings, (2) failing to provide adequate preventative skin care to prevent the development and worsening of pressure ulcers, (3) failing to follow instructions of the treating physician; (4) failing to timely transfer Ms. Billings to a facility that could provide adequate care; (5) failing to properly supervise and train employees and agents who were responsible for the care and treatment of Ms. Billings; (6) failing to have or implement appropriate policies and procedures regarding the prevention, assessment and treatment of pressure ulcers; (7) failing to have sufficient staff; and (8) failing to ensure that Manorcare of Wichita or Wichita Operations was properly capitalized.  Id., ¶¶ 254, 269, 314, 329.

Plaintiff alleges that HCR Delaware and HCR Ohio depleted the assets of Manorcare of Wichita, "thereby making it unable to pay a judgment resulting from the care of its residents" including Ms. Billings.  Id., ¶¶ 282, 297.  Plaintiff asserts that HCR Delaware and HCR Ohio are liable as alter egos of Manorcare of Wichita.  Likewise, plaintiff alleges that Centers for Care depleted the assets of Wichita Associates, "thereby making it unable to pay a judgment resulting from the care of its residents" including Ms. Billings.  Id., ¶ 342.  Plaintiff asserts that Centers for Care is liable as the alter ego of Wichita Operations.

## Analysis

HCR Delaware, HCR Ohio and Centers for Care seek to dismiss plaintiff's alter ego claims for failure to state a claim on which relief can be granted or secure a more definite statement of plaintiff's wrongful death and negligence claims.  ProMedica seeks to dismiss plaintiff's complaint for lack of personal jurisdiction and alternatively, a more definite statement.  The Court addresses

each argument in turn.

## I.      Motions To Dismiss Alter Ego Claims

Counts 3 and 4 allege that HCR Delaware and HCR Ohio are liable as alter egos of Manorcare of Wichita, and Count 7 alleges that Centers for Care is liable as alter ego of Wichita Operations.  HCR Delaware, HCR Ohio and Centers for Care ask the Court to dismiss these claims because plaintiff has failed to plead sufficient facts to state a plausible claim for alter ego liability.

Initially, the Court addresses what state law applies to plaintiff's claims of alter ego liability.  In a diversity case such as this, the Court applies the choice of law rules of the forum state.  Anderson v. Commerce Constr. Servs., Inc., 531 F.3d 1190, 1193 (10th Cir. 2008).  In tort cases, Kansas courts apply the law of the state where the wrong occurred, i.e. where plaintiff suffered injury.  Id. at 1194; Ling v. Jan's Liquors, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985).

The parties agree that plaintiff's alleged injuries occurred in Kansas.  Even so, HCR Delaware, HCR Ohio and Centers for Care argue that to determine the sufficiency of plaintiff's alter ego claims, the Court should apply the internal affairs doctrine and therefore the law of the state of incorporation for each defendant.  Under this approach, the Court would apply Delaware law to HCR Delaware, Ohio law to HCR Ohio and New York law to Centers for Care.  Plaintiff argues that this case involves a tort and the internal affairs doctrine therefore does not apply.

"The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders."  Edgar v. MITE Corp., 457 U.S. 624, 645 (1982).  Here, plaintiff has no prior or current affiliation with the corporate defendants.  He claims that HCR Delaware, HCR Ohio and Centers for Care (through their alter egos Manorcare of Wichita or Wichita Operations)

understaffed the care facility to such a degree that it caused injuries and death to Ms. Billings. In other words, he claims that acting through their alter egos, HCR Delaware, HCR Ohio and Centers for Care themselves committed tortious acts. Because plaintiff's claims do not directly impact the internal corporate affairs of HCR Delaware, HCR Ohio or Centers for Care, the internal affairs doctrine does not apply. See id. at 645 (declining to apply doctrine to suit involving tender offers which involve transfer of stock from shareholders to third parties and do not implicate internal affairs); First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 621 (1983) (while law of state or country of incorporation normally determines issues relating to internal affairs of corporation, different conflicts principles apply to issues which involve rights of third parties external to corporation); see also Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 982 (10th Cir. 2014) (absent clear showing that other state law applies, Kansas choice of law principles require court to default to Kansas substantive law) (citing In re K.M.H., 285 Kan. 53, 169 P.3d 1025 (2007)). Accordingly, the Court applies Kansas law. See US Telecom, Inc. v. 535 Live, Inc., Nos. 91-2281-L & 91-2282-L, 1992 WL 151921, at *1–2 (D. Kan. Feb. 10, 1992) (law of Kansas, not state of incorporation, applies to claim that defendant entered into contracts through alter ego).

Under Kansas law, in limited circumstances, one corporation can be held liable as the alter ego of another corporation. See Dean Ops., Inc. v. One Seventy Assocs., 257 Kan. 676, 680, 896 P.2d 1012, 1016 (1995). Courts will not extend the fiction of separate corporate identities to permit a corporation to evade its just operations, to promote fraud, illegality or injustice, or to defend crime. See id. at 681, 896 P.2d at 1016. Courts will disregard the fiction of separate legal entities when through domination of finances, policy and practices, "the controlled corporation has no separate mind, will, or existence of its own and is but a business conduit for its principal." Id.

Courts should reluctantly and cautiously exercise power to pierce the corporate veil.  Sampson v. Hunt, 233 Kan. 572, 579, 665 P.2d 743, 751 (1983).

Whether one corporation operates as an instrumentality of another is a question of fact which involves the consideration of many factors.  In determining whether a parent corporation acts as the alter ego of a subsidiary corporation, courts look to the following ten factors:

> (1) whether the parent corporation owns all or a majority of the capital stock of the subsidiary;
>
> (2) whether the corporations have common directors or officers;
>
> (3) whether the parent corporation finances the subsidiary;
>
> (4) whether the parent corporation subscribed to all of the capital stock of the subsidiary or otherwise causes its incorporation;
>
> (5) whether the subsidiary has grossly inadequate capital;
>
> (6) whether the parent corporation pays the salaries or expenses or losses of the subsidiary;
>
> (7) whether the subsidiary has substantially no business except with the parent corporation, or no assets except those conveyed to it by the parent corporation;
>
> (8) whether in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division;
>
> (9) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and
>
> (10) whether the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

Dean, 257 Kan. at 683, 896 P.2d at 1017.[1]  No single factor is determinative.  W & W Steel, LLC

---

[1]      In determining whether to disregard the corporate entity in other contexts (such as determining whether a corporation is an alter ego of an individual), courts look to similar factors. These include (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors, (6) absence of corporate records;

(continued . . .)

v. BSC Steel, Inc., 944 F. Supp. 2d 1066, 1073 (D. Kan. 2013) (citing Dean, 257 Kan. at 683, 896 P.2d at 1018)).  In addition to establishing that the parent did not maintain separation from the subsidiary, plaintiff must show that recognizing the legal fiction of separate corporate structures will result in injustice to third parties.  Dean, 257 Kan. at 687, 896 P.2d at 1020; W & W Steel, 944 F .Supp. 2d at 1073.

HCR Delaware argues that because it ceased to exist in July of 2018, plaintiff has failed to state a claim against it based on care which Ms. Billings received in November of 2018.  Plaintiff has not explained how HCR Delaware—as a prior corporate parent of Manorcare of Wichita—can be liable for such conduct.  Plaintiff alleges that some four months before Ms. Billings arrived at the care facility and before HCR Delaware ceased to exist as a corporate entity, HCR Delaware acted as the alter ego of Manorcare of Wichita and did not adequately capitalize the subsidiary.  Such allegations do not state a plausible claim for relief.  The Court therefore sustains HCR Delaware's motion to dismiss.

Unlike HCR Delaware, HCR Ohio was the corporate parent of Manorcare of Wichita when

----

[1](. . . continued)
(7) use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) use of the corporate entity in promoting injustice or fraud.  Kinder v. QI Enters., LLC, No. 111537, 2015 WL 1124603, at *2 (Kan. Ct. App. Mar. 6, 2015) (quoting Sampson, 233 Kan. at 579, 665 P.2d at 751).  Not all factors must be present, and any one factor can justify disregarding the corporate entity.  See Kinder, 2015 WL 1124603, at *2 (citing State ex rel. Graeber v. Marion Cty. Landfill, Inc., 276 Kan. 328, 355, 76 P.3d 1000, 1017 (2003)).

Here, the relevant subsidiaries (Manorcare of Wichita and Wichita Operations) are limited liability companies.  The parties do not address the issue, but it appears that Kansas courts use the same factors to address whether an individual or company is the alter ego of a subsidiary corporation or a limited liability company.  See Louisburg Bldg. & Dev. Co. v. Albright, 45 Kan. App. 2d 618, 631–36, 252 P.3d 597, 608–11 (2011) (applying same corporate veil principles to determine whether individual was alter ego of LLC); Emprise Bank v. Rumisek, 42 Kan. App. 2d 498, 520, 215 P.3d 621, 635 (2009) (same).

Ms. Billings was at the care facility in November of 2018.  Likewise, Centers for Care was the corporate parent of Wichita Operations when it assumed operation of the care facility in December of 2018.  HCR Ohio and Centers for Care do not dispute that plaintiff has alleged facts which would establish multiple factors on the issue of alter ego liability.[2]  Instead, they argue that plaintiff has not alleged facts which plausibly establish that treating the entities as separate corporate entities will result in fraud or injustice.

As to both HCR Ohio and Centers for Care, plaintiff alleges that the corporate parent depleted all assets of the subsidiary, "thereby making it unable to pay a judgment resulting from the care of its residents" including Ms. Billings.  Plaintiff's Complaint (Doc. #1), ¶¶ 297, 342.  A subsidiary's inability to pay a judgment because the parent company has depleted its assets is sufficient to find that recognition of distinct corporate entities would result in injustice to third persons.  Doughty v. CSX Transp. Inc., 258 Kan. 493, 500, 905 P.2d 106, 111 (1995) (if relationship between parent and subsidiary is so intimate, parent control is so dominating, and business and assets of two are so mingled that recognition of distinct entity would result in injustice to third persons, courts will look through legal fiction of separate entities and treat them as justice requires); see Burnett v. Conseco Life Ins. Co., No. 118CV00200JPHDML, 2020 WL 4788012, at *6 (S.D. Ind. Aug. 17, 2020) (under Delaware law, claim of alter ego liability sufficient where subsidiary was corporate fiction that parent companies left undercapitalized and without ability to

_____

[2]      As to each defendant, plaintiff alleges that (1) the corporate parent owns all or most of the capital stock of the subsidiary, (2) the corporate parent and subsidiary have common directors or officers; (3) the corporate parent finances the subsidiary; (4) the subsidiary has grossly inadequate capital; (5) the parent pays the losses of the subsidiary; (6) the corporate parent uses the property of the subsidiary as its own; and (7) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation and in the parent's interest.  Plaintiff's Complaint (Doc. #1), ¶ 296 (HCR Ohio as parent and alter ego of Manorcare of Wichita), id., ¶ 341 (Centers for Care as parent and alter ego of Wichita Operations).

pay large judgment); see also Boilermaker-Blacksmith Nat'l Pension Fund v. Gendron, 96 F. Supp. 2d 1202, 1218 (D. Kan. 2000) (under ERISA, plaintiff can establish unfairness, injustice, fraud or other inequitable conduct if defendant's disregard of corporate formalities caused company to be less able to pay plaintiff).  Accordingly, the Court overrules the motions to dismiss of HCR Ohio and Centers for Care.

## II.    Motions For More Definite Statement

HCR Ohio and Centers for Care seek a more definite statement on plaintiff's claims for wrongful death and negligence.  HCR Ohio also seeks a more definite statement on plaintiff's allegations of joint enterprise or joint venture.  "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

HCR Ohio and Centers for Care argue that plaintiff's claims for wrongful death and negligence do not adequately allege the role of each defendant.  Plaintiff alleges that from the time of Ms. Billings's admission through November 30, 2018, HCR Ohio exercised substantial control of the skilled nursing facility and exercised final authority over (1) staffing budgets; (2) development and implementation of nursing policies and procedures; (3) hiring and firing of the administrator; and (4) appointing the governing body that was legally responsible for establishing and implementing policies regarding the management and operation of the facility. Plaintiff's Complaint (Doc. #1), ¶ 40.  Similarly, plaintiff alleges that HCR Delaware, ProMedica and HCR Services each exercised substantial control and final authority over the same areas of staffing, policies, procedures and appointment of a governing body to manage and operate the facility.  Id., ¶¶ 50, 60, 96.  In many allegations, the complaint refers collectively to the "ManorCare Defendants," defined as Manorcare of Wichita, HCR Delaware, HCR Ohio,

ProMedica and HCR Services, LLC, and asserts that these defendants acted as a joint venture or joint enterprise.  As part of the wrongful death and negligence claims, plaintiff alleges that the "Manorcare Defendants and their agents, servants and/or employees breached their duty and were guilty of the following acts of negligence and carelessness by failing to measure up to the requisite standard of due care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances," including (1) failing to adequately assess, monitor, document, treat and respond to decedent's needs, (2) failing to provide adequate preventative skin care to prevent the development and worsening of pressure ulcers, (3) failing to follow instructions of the treating physician; (4) failing to timely transfer Ms. Billings to a facility that could provide adequate care; (5) failing to properly supervise and train employees and agents who were responsible for the care and treatment of Ms. Billings; (6) failing to have or implement appropriate policies and procedures regarding the prevention, assessment and treatment of pressure ulcers; (7) failing to have sufficient staff; and (8) failing to ensure that Manorcare of Wichita was properly capitalized.  Id., ¶¶ 254, 269.

Plaintiff's allegations against Centers for Care, which relate to the period beginning December 1, 2018, essentially mirror his allegations against HCR Ohio and other defendants for the prior period.  Id., ¶¶ 76–80, 222–45, 306-19.  Highly summarized, plaintiff alleges that beginning December 1, 2018, Centers for Care exercised substantial control of the skilled nursing facility and it failed to provide adequate staffing or patient care which resulted in Ms. Billings's death.

Plaintiff's allegations provide HCR Ohio and Centers for Care ample notice of the bases

for his wrongful death and negligence claims so that they can reasonably prepare a response.[3]

Plaintiff alleges that multiple defendants—collectively and individually—controlled staffing and

patient care, and sets forth how they did so.  See id., ¶¶ 40, 76 (approval of staff budget,

implementing policies and procedures; hiring and firing of facility administrator and appointing

governing body to implement policy in managing and operating facility).  At this stage, plaintiff

is not required to further specify the precise roles of each defendant.  Plaintiff's claims are not

implausible or vague simply because they allege that multiple defendants exercised authority over

many of the same aspects of facility operation or that they acted jointly in doing so.  The Court

therefore overrules defendants' motions for a more definite statement.

## III.      Personal Jurisdiction Over ProMedica

ProMedica seeks to dismiss plaintiff's complaint for lack of personal jurisdiction.  When a

defendant files a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2),

plaintiff bears the burden to establish that the Court has personal jurisdiction.  Rockwood Select

Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch, 750 F.3d 1178, 1179–80 (10th Cir.

2014).  At this preliminary stage of the litigation, plaintiff's burden to prove personal jurisdiction

is light.  AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1056 (10th Cir. 2008).  To

defeat the motion, plaintiff needs only make a prima facie showing of personal jurisdiction.  Id.

He can do so by showing facts, via affidavit or other written materials, that if true would support

jurisdiction over each defendant.  Id.  When evaluating the prima facie case, the Court must resolve

all factual disputes in favor of plaintiff.  Id.

---

[3]       In denying a motion for a more definite statement, Magistrate Judge Teresa J. James similarly concluded that the complaint provides HCR Services adequate notice so that it can prepare a responsive pleading.  Memorandum And Order (Doc. #66) filed November 8, 2021 at 5. In the complaint, plaintiff alleges that HCR Services engaged in nearly identical conduct as the other HCR defendants.

The Court applies Kansas law to determine whether ProMedica could be liable as an alter ego for purposes of personal jurisdiction. Luc v. Krause Werk GMBH & Co., 289 F. Supp. 2d 1282, 1288 (D. Kan. 2003) (for purposes of personal jurisdiction, plaintiff must make prima facie showing that application of Kansas law would result in alter ego liability).

For the Court to exercise personal jurisdiction in a diversity action, plaintiff must show that personal jurisdiction is proper under the laws of the forum state and that doing so comports with the due process requirements of the United States Constitution. See Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013). The Kansas long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution. See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17 F.3d 1302, 1304-05 (10th Cir. 1994); see also K.S.A. § 60-308(b)(1)(L). Accordingly, the Court need not conduct a separate personal jurisdiction analysis under Kansas law, and may proceed directly to the due process inquiry. See Niemi v. Lasshofer, 770 F.3d 1331, 1348 (10th Cir. 2014) (where long-arm statute confers maximum jurisdiction consistent with Due Process Clause, statutory inquiry effectively collapses into constitutional analysis). The due process analysis requires the Court to determine (1) whether ProMedica has "minimum contacts" with the forum state such that it should "reasonably anticipate being haled into court there," World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980), and (2) if ProMedica's actions establish minimum contacts, whether the exercise of personal jurisdiction "offends traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Super. Ct., 480 U.S. 102, 113 (1987).

Here, ProMedica limits its due process challenge to the first prong, asserting that plaintiff has not established minimum contacts with Kansas. To satisfy the "minimum contacts" standard, plaintiff can establish that the Court has either (1) specific jurisdiction or (2) general jurisdiction.

Rockwood Select, 750 F.3d at 1179.  The Court has specific jurisdiction if defendants "purposely directed" their activities at residents of the forum state, and plaintiff's alleged injuries "arise out of" the forum-related activities.  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1071 (10th Cir. 2008).  The aim of the "purposeful direction" doctrine is to ensure that defendants are not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state.  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

Plaintiff asserts that the Court has specific jurisdiction over ProMedica because (1) it owns and operates skilled nursing facilities in Kansas and (2) plaintiff's injuries arise out of its activities in Kansas, i.e. they occurred at a nursing facility that it owned and operated.  ProMedica has submitted the affidavit of Scott Fought, one of its vice presidents.  Fought states that on July 26, 2018, ProMedica acquired the operations of HCR Ohio, which operates as a passive holding company.  Affidavit of Scott Fought ¶ 13, Exhibit A to Memorandum Of Law In Support Of Defendant ProMedica Health System, Inc.'s Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(2), Or In The Alternative, Motion For  A More Definite And Certain Statement Pursuant To Fed. R. Civ. P. 12(e) (Doc. #38) filed August 25, 2021.  ProMedica "has never directly or indirectly operated, supervised, governed, or managed any aspect of the day-to-day operations of Manor Care of Wichita, including patient care."  Id., ¶ 16.  Specifically, when Ms. Billings was admitted to Manorcare of Wichita, ProMedica "did not have any authority or involvement with staffing budgets, the development and implementation of nursing policies and procedures, the hiring and/or firing of Manor Care of Wichita's Administrator, or establishing and/or implementing policies relative to the management and operation of Manor Care of Wichita."  Id., ¶ 15.

In response, plaintiff has submitted ProMedica's unaudited quarterly disclosure for the

-15-

period ending June 30, 2020.   See Exhibit A to Plaintiff's Suggestions In Opposition To ProMedica Health System, Inc.'s Motion To Dismiss (Doc. #50) filed October 6, 2021.  The report notes that in 2018, ProMedica or its subsidiaries acquired HCR ManorCare, a multi-state network of skilled nursing and rehabilitation centers, assisted living communities, hospice and home health agencies.   Id. at 8; see id. at 1 (noting that report refers to ProMedica and its subsidiaries collectively as "ProMedica").   It states that ProMedica or its subsidiaries serve communities in 28 states through its three operating divisions: Provider, Senior Care and Paramount Insurance. Id. at 9.  The report includes a chart dated July 11, 2020, which indicates that ProMedica or its subsidiaries had several skilled nursing facilities in the United States, but none of them were in Kansas (where ProMedica and its subsidiaries only had home health and hospice operations).  Id.[4]

As explained above, at this stage, the Court resolves all factual disputes in plaintiff's favor. Even so, ProMedica's quarterly report does not contradict the Fought affidavit which states that ProMedica has never directly or indirectly operated, supervised, governed or managed any aspect of the day-to-day operations of Manor Care of Wichita, including patient care.  Fought Affidavit ¶ 16.  Plaintiff has not presented sufficient evidence to present a factual dispute whether his injuries arose out of ProMedica's forum-related activities.  Dudnikov, 514 F.3d at 1071.  Accordingly, plaintiff has not established a prima facie case that the Court has personal jurisdiction over ProMedica.[5]

_____

[4]    Plaintiff ignores the fact that the report presents the results of operations and the financial position for ProMedica and its subsidiaries for the three-month and six-month periods ending June 30, 2020.  Id. at 1.  In other words, the report begins with operations as of January 1, 2020, which was some eight months after Ms. Billings died and some 13 months after ProMedica's subsidiary had sold the care facility in Wichita.

[5]    In response, plaintiff does not assert—and the complaint does not include a factual basis to establish—that the Court has general jurisdiction over ProMedica.  Likewise, plaintiff
(continued . . .)

**IT IS THERFORE ORDERED** that <u>Defendant Centers For Care, LLC's Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6) And For More Definite And Certain Statement Pursuant To Fed. R. Civ. P. 12(c)</u> (Doc. #27) filed August 23, 2021 is **OVERRULED**.

**IT IS FURTHER ORDERED** that <u>Defendant HCR Manorcare, Inc. (DE)'s Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6), Or In The Alternative, Motion For A More Definite And Certain Statement Pursuant To Fed. R. Civ. P. 12(e)</u> (Doc. #35) filed August 25, 2021 is **SUSTAINED**. **Pursuant to Fed. R. Civ. P. 12(b)(6), the Court dismisses HCR Manorcare, Inc., a Delaware corporation.**

**IT IS FURTHER ORDERED** that <u>Defendant ProMedica Health System, Inc.'s Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(2), Or In The Alternative, Motion For A More Definite And Certain Statement Pursuant To Fed. R. Civ. P. 12(e)</u> (Doc. #37) filed August 25, 2021 is **SUSTAINED**. **Pursuant to Fed. R. Civ. P. 12(b)(2), the Court dismisses ProMedica Health System, Inc. for lack of personal jurisdiction.**

**IT IS FURTHER ORDERED** that <u>Defendant HCR Manorcare, Inc. (OH)'s Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6), Or In The Alternative, Motion For A More Definite And Certain Statement Pursuant To Fed. R. Civ. P. 12(e)</u> (Doc. #39) filed August 26, 2021 is **OVERRULED**.

Dated this 13th day of December, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[5](. . . continued)
does not assert—and the complaint does not include a factual basis to establish—that the Court has specific jurisdiction over ProMedica because it acted as the alter ego of any other defendant. The Court therefore does not evaluate these alternative theories.