## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **HENRY ED BILLINGS,** ) | |
| *individually and as special Administrator* ) | |
| *of the estate of* **Judy Billings,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 2:21-cv-02295-KHV-TJJ** |
| ) | |
| **MANORCARE OF WICHITA, KS LLC;** ) | |
| **HCR HEALTHCARE, LLC;** ) | |
| **HCR MANORCARE SERVICES, LLC;** ) | |
| **WICHITA OPERATIONS** ) | |
| **ASSOCIATES, LLC; CENTERS FOR** ) | |
| **CARE, LLC** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Plaintiffs' Motion to Compel Discovery (ECF No. 93). Plaintiff[1] asks the Court to compel Defendant Wichita Operations Associates, LLC to produce documents responsive to certain Requests for Production of Documents contained in Plaintiffs' Amended Notice of Video Deposition.[2]  As set forth below, the Court grants Plaintiff's motion.

### I.     Relevant Background

In the complaint, Plaintiff alleges Judy Billings (Decedent) died from an avoidable pressure injury at the skilled nursing facility which was known as Manorcare of Wichita when Decedent began living there on November 14, 2018, and whose name changed to Wichita

---

[1]  Although Henry Ed Billings appears both individually and as special administrator of the estate of Judy Billings with the case caption reflecting each as a separate party, in this Memorandum and Order the Court will refer to him as a singular Plaintiff.

[2]  The Notice is found at ECF No. 88.

Operations when the facility was sold some two weeks later on December 1, 2018. Plaintiff asserts Wichita Operations, LLC ("Operations") and/or individuals or entities acting on its behalf owned, operated, managed, maintained, and/or controlled the facility. Plaintiff also asserts Centers for Care, LLC ("Centers for Care") and/or individuals or entities acting on its behalf owned, operated, managed, maintained, and/or controlled Operations in whole or in part.

The issues in the case include, among others, what caused Decedent's death and which legal entities were responsible for ensuring Operations provided the minimally acceptable standard of care while it operated the facility during Decedent's residency. Plaintiff alleges Operations and Centers for Care are liable for Decedent's death after they and facility staff failed to prevent a pressure ulcer that led to her death. Plaintiff further alleges Operations and Center for Care engaged in conduct resulting in an understaffed and undercapitalized nursing home, putting residents' safety in jeopardy as they increased profits. Plaintiff's claims therefore focus both on the health care and treatment Decedent received, as well as on the financial operation and management of the facility. To that end, Plaintiff included in its Rule 30(b)(6) deposition notice to Operations requests for certain documents. On March 7, 2022, Operations served its responses and objections to the requests. The parties conferred, the deposition went forward on May 13, 2022, and Operations later supplemented its responses. As a result, only three requests remain at issue: numbers 7, 8, and 13. Plaintiff timely filed the instant motion.

The Court finds the parties have conferred in an attempt to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.

## II.    Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. As

amended, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[3]

Considerations of both relevance and proportionality now govern the scope of discovery.[4] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[5] Information still "need not be admissible in evidence to be discoverable."[6] The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[7]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[8] Moving the proportionality provisions to Rule 26 does not place on the party

---

[3] Fed. R. Civ. P. 26(b)(1).

[4] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[5] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[6] Fed. R. Civ. P. 26(b)(1).

[7] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[8] *Id.*

seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[9]  In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[10]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[11]  Relevancy determinations are generally made on a case-by-case basis.[12]

"A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[13]  The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[14]  An objection that discovery is unduly burdensome "must contain a factual basis for

---

[9] *Id.*

[10] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[11] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[12] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[13] *Stonebarger v. Union Pac. RR Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10–2514–RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).

the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[15]

## III.   Analysis

With the legal standards in mind, the Court considers the requests for which Plaintiff seeks to compel Defendant to produce documents.

Defendant objects that certain requests seek information not proportional to the needs of the case[16] and that another request is unduly burdensome.[17]  Defendant offers no explanation or evidence and submits no affidavits to support its conclusory statements. Such boilerplate objections, standing alone, do not constitute a successful objection to a discovery request.[18]  The Court will not consider the objections unless the objecting party shows "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each question is overly broad [or] burdensome . . . by submitting affidavits or offering evidence revealing the nature of the burden."[19]  Moreover, Defendant makes no mention of either objection in its response to the motion to compel. The Court therefore considers Defendant to have abandoned its objections of lack of proportionality and undue burden, and the Court overrules them.

---

[14]  *Id.*

[15]  *Id.*

[16]  The objection was posed to Requests Nos. 7 and 13.

[17]  The objection was posed to Request No. 8.

[18]  *See Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 518-19 (D. Kan. 2010).

[19]  *Allianz Ins. Co. v. Surface Specialties, Inc.*, No. 03-2470-CM-DJW, 2005 WL 44534, at *2 (D. Kan. Jan. 7, 2005).

Similarly, Defendant raises "general objections" to Plaintiff's deposition notice and to every topic and document request contained therein, and states its responses are made subject to and without waiving the general objections. But again, Defendant makes no effort to apply any of its theoretical general objections to the notice, the topics for the deponent, or the document requests. "[G]eneral objections are considered merely 'hypothetical or contingent possibilities' when the objecting party makes 'no meaningful effort to show the application of any such theoretical objection to any request for discovery.' Thus, where the objecting party makes no attempt to apply the theoretical general objection, the Court will deem those general objections waived and will decline to consider them as objections at all."[20] Defendant also omits any argument in favor of its general objections from its response to the motion. Consequently, the Court also considers Defendant to have waived and abandoned its general objections, and the Court overrules them.[21]

What remains for ruling is Defendant's general relevance objections to Request Nos. 7, 8, and 13. In its response, Defendant jointly addresses Requests No. 7 and 8.[22] Those requests are as follows:

### 7.   Budget Variance Reports – All Monthly Budget Variance Reports

[20] *Pro Fit Mgt., Inc. v. Lady of Am. Fran. Corp.*, 08-CV-2662 JAR/DJW, 2011 WL 939246, at *2 (D. Kan. Feb. 25, 2011) (internal citation omitted).

[21] The Court notes Defendant's "general objections" are also conditional objections not favored in this District. Having found the general objections waived and abandoned, the Court need not address their conditional nature.

[22] In its argument regarding Requests Nos. 7 and 8, Defendant states it has supplemented its responses to limit the scope of issues before the Court. However, the exhibit it references contains no supplemental response to either of these requests.

**generated for the Facility[23] for the Pertinent Years.[24]**

    **8.  Credit Agreement – All documents reflecting any credit agreement, credit line, financing agreement, or other form of financing obtained for the financing of the Facility in effect during the Time Period of Resident's Stay.[25]**

Defendant argues that credit line agreements and budget variance reports are "simply not relevant to the ultimate determination that a jury must find in this matter concerning this Defendant – i.e., did Wichita Operations Associates, LLC breach the standard of care and whether the pressure ulcer caused Judy Billings' death."[26] Even if the requested documents were relevant to this issue, "this Defendant simply cannot conceptualize how a credit line agreement with a separate entity and/or budget variance reports would have any relevance as to whether this Defendant breached the standard of care."[27]

Plaintiff provides a cogent explanation of the relevance of each of these requests. Federal regulations provide the staffing standard that applies to skilled nursing facilities such as the one at issue in this case. "The facility must have sufficient nursing staff with the appropriate competencies and skills sets to provide nursing and related services to assure resident safety and

---

[23] "Facility" is defined as Wichita Operations Associates, LLC.

[24] "Pertinent Years" is defined as 2017, 2018, and 2019. Plaintiff agreed to modify the definition for this request to 2018 and 2019.

[25] "Time Period of Resident's Stay" is defined as November 14, 2018 to April 13, 2019. Plaintiff agreed to modify the definition for this request to December 1, 2018 through April 13, 2019, which constitutes the period Wichita Operations Associates, LLC operated the facility.

[26] ECF No. 95 at 10.

[27] *Id.*

attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care and considering the number, acuity and diagnoses of the facility's resident population in accordance with the facility assessment required at § 483.70(e)."[28] Because the complaint alleges Operations' failure to provide adequate staffing, training, and competent staff caused Decedent's death, the state of Operations' knowledge regarding the number, competency, and skill sets of its staff is relevant.

More specifically with respect to Request No. 7, Plaintiff alleges Operations did not provide staff based on the criteria set forth in the federal staffing standards, but instead based on budgets created and/or approved by Defendant Centers for Care aimed at cutting costs and holding Operations accountable for staying within the budget. Plaintiff has agreed to limit Request No. 7 to nursing staff budget variance reports only, which will reveal how much the actual nursing staff varied from the budget. Because this information is relevant to one of Plaintiff's claims, and Plaintiff asserts without opposition that it cannot support the claim without the nursing staff budget variance reports, the Court will grant the motion with respect to Request No. 7.

Turning to Request No. 8, Plaintiff explains the credit line inquiry is relevant because it believes responsive documents will support its following claims:

(1) Defendant Centers for Care obtained a single credit line to operate the multiple

---

[28] 42 C.F.R. § 483.35. Plaintiff also describes three documents the federal Centers for Medicare & Medicaid Services agency requires skilled nursing facilities to sign under penalty of perjury, each of which requires the facility to abide by the applicable federal regulations. Defendant does not dispute the applicability of any of these requirements to its operation of the facility in question.

facilities in their chain and used the receivables from each nursing home to collateralize the line without permission from the administrator at each facility;

(2) the receivables were then deposited into a depositary account for each facility and "swept" to a single account in the name of an entity other than Operations;

(3) the credit line required minimum census and EBITA (earnings before interest, taxes and amortization) for each facility, and if any single facility defaulted on its obligations, that default adversely affected other non-defaulting facilities; and

(4) the credit line also made each entity jointly and severally liable for every other entity's obligations.

If true, Plaintiff asserts these facts are evidence the facility was not a standalone nursing home and instead was operated and managed by Defendant Centers for Care who used Operations as a tool in its nationwide nursing home chain. Plaintiff also contends these facts (if true) would serve as evidence of Plaintiffs' alter ego claims with respect to Centers for Care.

Defendant repeats its position that whether Operations had an available line of credit is not relevant to Plaintiff's claims. Plaintiff has plainly articulated the manner in which it is, and the Court will grant the motion with respect to Request No. 8.[29]

The Court turns to the remaining Request at issue:

**13.   Clinical and/or Administrative Policies – Complete copies of all policies and procedures in effect at the Facility during the Time Period of Resident's Stay.**

---

[29] Plaintiff cites an order on a motion to compel in *Murray v. ManorCare of Topeka, KS, LLC*, No. 19-2148-DDC-KGG, 2020 WL 1819884 (D. Kan. Apr. 10, 2020). The claims in that case are similar to the ones raised by Plaintiff, and two of the discovery requests at issue are virtually identical to Request Nos. 7 and 8. In the order granting the motion to compel, Magistrate Judge Gale likewise found the requests relevant and overruled the relevance objection.

9

Plaintiff asserts this request seeks relevant information because the complaint alleges Operations failed to follow and/or lacked appropriate policies and procedures regarding resident care. Moreover, Plaintiff asserts the Kansas Administrative Regulations for Adult Care Homes requires the facility to make these policies and procedures publicly available.[30]

In its response, Defendant makes no mention of its objection to this request. Defendant's abandonment of a relevance objection is reason enough to overrule it, but the Court also affirmatively finds the request is relevant for the reasons Plaintiff offers. The Court will grant the motion with respect to Request No. 13.

## IV.    Sanctions

Rule 37(a)(5)(A) provides that if a motion to compel is granted, the court must, after giving an opportunity to be heard, require the responding party to pay the movant's reasonable expenses and attorney's fees incurred in making the motion.[31]  The court must not order payment, however, if the opposing party's nondisclosure, response, or objection was substantially justified, or if other circumstances make an award of expenses unjust.[32]

In his motion, Plaintiff makes no request for sanctions, and the Court finds under the applicable standard that none should be imposed.   Defendant provided more discovery

---

[30] Kan. Admin. Regs. § 28-39-163 ("Policies and procedures shall be available to staff at all times. Policies and procedures shall be available, on request, to any person during normal business hours. The facility shall post a notice of availability in a readily accessible place for residents.").

[31] Fed. R. Civ. P. 37(a)(5)(A).

[32] Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).   The rule also provides no such payment shall be awarded if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action.   Fed. R. Civ. P. 37(a)(5)(A)(i).   The Court has found to the contrary.

responses after receiving Defendant's motion, thereby narrowing the issues for the Court's consideration. Accordingly, the Court will not impose sanctions.

**IT IS THEREFORE ORDERED THAT** Plaintiffs' Motion to Compel Discovery (ECF No. 93) is **GRANTED.**

**IT IS FURTHER ORDERED THAT** Defendant Wichita Operations Associates, LLC's objections to Request Nos. 7, 8, and 13 are **OVERRULED.** Defendant Wichita Operations Associates, LLC shall provide all documents responsive to these requests within **ten (10) days** of the date of this Order.

**IT IS SO ORDERED.**

Dated this 2nd day of September, 2022, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

11